WILLIAM CRANE, *et al.*, v. SIBBY FIPPS.

1. DOWER; *Divorce; Error.* On November 12, 1875, and prior thereto, Burton Crane and Sibby Crane, now Sibby Fipps, were husband and wife. On that day Sibby Crane obtained a decree granting to her a divorce and $50 alimony, from her husband, on account of the "fault" and "aggression" of her husband. At the time when the decree of divorce was rendered, Burton Crane owned 240 acres of land situated in Johnson county, Kansas. Afterward, Sibby Crane was married to one Joseph Fipps, with whom she is still living. Afterward, Burton Crane died, leaving seven children as his heirs. Sibby Crane Fipps afterward commenced an action against the children and heirs of Burton Crane, asking to have "her dower" "set off to her in the lands aforesaid." The defendants demurred to the plaintiff's petition, on the ground that it did not state facts sufficient to constitute a cause of action; and the court below overruled the demurrer. *Held*, Error.

2. SECTION 646 OF CODE, *Construed; Dower; Inheritance.* And *further held*, in such case, that that provision of § 646 of the civil code, as amended in 1870, relating to dower, was not intended to create the right of dower, but was simply intended to reserve to a divorced wife just such right of dower as she, as a wife, might be entitled to by virtue of some other statute in force at the time of the divorce, and nothing more nor less; and that as the statutes giving the right of dower to wives or widows had, in 1868, been repealed, and all right of dower had been abolished, and as no new law giving any right of dower had subsequently been enacted, such provision could not be operative in the present case. And *further held*, that the word "dower" in said provision cannot be construed to mean *inheritance.* And *further held*, that Sibby Crane Fipps has no interest in the land in controversy.

*Error from Johnson District Court.*

THE nature of the action, and the facts, appear in the opinion. At the November Term, 1882, of the district court,

plaintiff *Fipps* had judgment against defendants *Crane* and others, who bring the case to this court.

*Gill & Parker,* and *Sam. E. McCracken,* for plaintiffs in error.

*Burris & Little,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On November 12, 1875, and prior thereto, Burton Crane and Sibby Crane, now Sibby Fipps, were husband and wife. On that day, Sibby Crane obtained a decree granting to her a divorce and $50 alimony, from her said husband, on account of the "fault" and "aggression" of her husband. At the time when the decree of divorce was rendered, Burton Crane owned 240 acres of land, situated in Johnson county, Kansas. Afterward, Sibby Crane was married to one Joseph Fipps, with whom she is still living. Afterward, Burton Crane died, leaving as his heirs the following children, to wit: William Crane, Thomas Crane, Frank Crane, Peter Crane, Samuel Crane, Carter Crane, and Susan Crane Andrews. Burton Crane was still the owner of said land when he died. Sibby Crane Fipps afterward commenced this action against the children and heirs of Burton Crane, asking to have "her dower" "set off to her, in the lands aforesaid." The defendants demurred to the plaintiff's petition, on the ground that it did not state facts sufficient to constitute a cause of action; but the court below overruled the demurrer, to which ruling the defendants excepted, and now bring the case to this court for review. They claim that the plaintiff below, defendant in error, has no right of dower or any interest in the land in controversy.

The statutes upon which this case is to be decided are as hereinafter stated and quoted. Prior to 1868, there was a statute in force relating to dower, giving the widow at her election dower in her deceased husband's real estate. (Comp. Laws of 1862, ch. 83.) But in 1868 this statute was repealed, and the estates of dower and by curtesy were abolished. (Gen. Stat. 1868, ch. 33, § 28; Comp. Laws

1879, ch. 33, § 28.)   Section 646 of the civil code, as enacted in 1868, reads as follows:

"SEC. 646. When the divorce is granted for the fault of the husband, the court may adjudge to the wife a reasonable sum as alimony, to be paid by the husband in gross, or in installments, out of his estate; and any such allowance shall have the same effect, and may be enforced, as any other money judgment."   (Gen. Stat. 1868, ch. 80, p. 758.)

Afterward, and in 1870, this section was amended so as to read as follows:

"SEC. 646. When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to all her lands, tenements and hereditaments not previously disposed of, and restored to her maiden name, if she so desires, and shall be allowed such alimony out of her husband's real and personal property as the court shall think reasonable, having due regard to the property which came to him by marriage, and the value of his real and personal estate at the time of said divorce, which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or installments, as the court may deem just and equitable; and if the wife survive her husband, she shall also be entitled to her right of dower in the real estate of her husband, not allowed her as alimony, of which he was seized at the time during the coverture, to which she had not relinquished her right of dower; but if the divorce shall arise by reason of the fault or aggression of the wife, she shall be barred of all right of dower in the lands of which her husband shall be seized at the time of the filing of the petition for divorce, or which he may thereafter acquire, whether there be issue or not; and the court shall order restoration to her of the whole of her lands, tenements or hereditaments not previously disposed of, and also such share of her husband's real or personal property, or both, as to such court may appear just and reasonable."   (Comp. Laws of 1879, ch. 80, p. 691.)

The plaintiff relies upon the following words contained in amended § 646, to wit:

"And if the wife survive her husband, she shall also be entitled to her right of dower in the real estate of her husband not allowed her as alimony, of which he was seized at the time during coverture, to which she had not relinquished her right of dower."

It will be seen that this is only a very small portion, and comparatively a very unimportant portion, of the new matter inserted in the amended section. The section was evidently amended for the purpose of inserting the other new matter, and not merely for the purpose of inserting this. It was copied substantially from §§ 5699 and 6700 of the revised statutes of Ohio; and the clause upon which the plaintiff relies in this case was permitted to remain in the section, notwithstanding the difference between our laws with regard to dower and the laws of Ohio. In Ohio, a widow is entititled to dower, but in this state she is not. It has been decided by the supreme court of Ohio, in the case of *Lamkin v. Knapp*, 20 Ohio St. 454, that this provision in the Ohio statutes simply *saves* and *reserves* to the divorced wife the right of dower which she would have had by virtue of other statutes in her husband's lands if she had not been divorced; and there is no claim or pretense in Ohio, as we understand, that this provision creates any new right of dower. We think the provision must be construed the same way in this state. It was simply intended by this provision to *reserve* to the divorced wife just such right of dower as she might be entitled to by virtue of other statutes at the time of the divorce, and nothing more or less. But as the statutes giving the right of dower to wives and widows had previously been repealed, and as all right of dower had previously been abolished, and as no new law giving any right of dower had subsequently been enacted, this provision could not in the present case be operative. It would not in fact give to the divorced wife anything.

It is claimed, however, that the word "dower" in said provision should be construed to mean *inheritance*, and therefore that she should take under the laws relating to descents and distributions. Now such cannot be the case; for if the legislature had intended *inheritance*, it would have said so. Besides, to construe the word "dower" to mean *inheritance* would do great injustice, which we cannot suppose the legislature intended. In fact, however, we suppose that the leg-

islature devoted but very little consideration to this particular
subject; but so far as it did, it undoubtedly intended that the
divorced wife should not have any interest in her former hus-
band's estate greater than that allowed by the court as ali-
mony, and the mere right of dower; and dower only after
some act should be passed giving to wives or widows a right
of dower in their deceased husband's estates.   The plaintiff,
however, claims that she has a present right of dower, or
right of inheritance, or some other right, in her former hus-
band's lands, without the passage of any additional statute.
Now, for the purposes of the argument, suppose she has: then
is she to have her dower or inheritance or other interest in two
husbands' estates at the same time—in her former husband's
estate and in her present husband's estate?   And suppose that
her former husband, after the divorce is granted, marries
again, and then dies: will both his wives or widows take an
interest in his lands?   Under the act relating to descents and
distributions, (Comp. Laws 1879, ch. 33,) his real wife will
take one-half of all his real estate, and his children will take
the other half; then what is there left for his divorced wife to
take?   Can she take still another half, or some other portion
of his estate?   Or suppose he dies without leaving any real
wife, as in the present case: then, under the act relating to
descents and distributions, his children—seven in number in
the present case—will take the whole of his estate.   Then
what will his divorced wife take?   And in all cases the act
relating to descents and distributions provides for the distri-
bution of the whole of a deceased person's estate to others
than the divorced wife, and does not provide for giving any-
thing to her.   Will the act relating to descents and distribu-
tions govern, or will the clause in § 646 of the civil code,
upon which the plaintiff relies, be construed as repealing or
modifying the act relating to descents and distributions, so
that the divorced wife may take something?   Repeals and
modifications by implication are seldom favored.   The former
husband's children might, however, in some cases, all be born
after the divorce was granted, and as children of a second

wife: then would the divorced wife take all of her former husband's estate, and would this second wife and her children be debarred from taking any portion of the same? The act relating to descents and distributions would give it all to the second wife and her children; but the plaintiff, we suppose, would claim that all should go to her under said clause of § 646 of the civil code. If the former husband had died on the day before the divorce was granted to the divorced wife, his then wife, she would undoubtedly have taken all his estate under the act relating to descents and distributions; and why should she lose this right, if said clause of § 646 of the civil code reserves to her all her rights in her former husband's estate? Are the laws wrong in permitting the former husband to marry again and have children? Or suppose, when the former husband dies, it is found that all his land which he had owned during the coverture of his divorced wife, and to which she had not relinquished her right of dower, had been sold at judicial sale to pay his debts, or was necessary to pay his debts: then would she take the land from her former husband's creditors and from the purchasers who purchased the same at judicial sale? If she is entitled to any interest in the land of her former husband under the said clause of § 646, she would take the same from creditors and from purchasers at judicial sale, as well as from others, for there is no exception or limitation in this respect. She would therefore be in a better condition than a real wife would be, for a real wife cannot take any interest in her husband's lands which have been sold from him at judicial sale, or which are necessary for the payment of his debts. (Comp. Laws of 1879, ch. 33, § 8.) If this is the proper interpretation to be given to the statutes, then they certainly tend to encourage wives to obtain divorces; for divorced wives would have rights which they could not have as real wives; and if a divorced wife would not lose this additional right by marrying some other person, as the plaintiff in this case claims she would not, then would she lose such right if she should remarry her former husband? But suppose her former husband after the divorce should

marry some other woman, and then suppose that he should desire to sell his land: would he then have to go to both his wives—his real wife and his divorced wife—and get them to sign the deed? And must purchasers of real estate take notice whether the vendor has a divorced wife living, or not, and see that she, as well as the real wife, signs the deed?

Now we do not think the legislature ever contemplated or intended any such difficulties. It really intended that said clause in § 646 of the civil code should be inoperative until some other legislation should be had, giving it operation without such great inconvenience and injustice as must ensue if it is given operation without additional legislation.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.